IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

v.

MAURICE JAMMOROW BEAVERS,

Defendant.

CRIMINAL ACTION FILE
NO. 4:12-CR-00009-RLV-
WEJ-7

## **NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on a Motion to Suppress Statements [113] filed by defendant number seven, Maurice Jammorow Beavers.[1] The undersigned conducted a hearing on this Motion on June 28, 2012 [124], which has been transcribed [128] (hereafter "Tr."). For the reasons explained below, the undersigned **RECOMMENDS** that the Motion to Suppress Statements be **DENIED**.

---

[1] Although this particular motion is captioned with the name of defendant Fredrico Jones [76], Mr. Beavers filed a Motion to Adopt [77] it, which was granted [94]. The Clerk docketed the motion a second time as [113].

## I. BACKGROUND

### A. The Incident

According to evidence presented at the bond hearings in this case, on November 2, 2011, several men traveled from Atlanta to the parking lot of the Cracker Barrel restaurant located in Cartersville, Georgia to buy five kilograms of cocaine and 150 pounds of marijuana from a "drug dealer." The men did not know that the supposed drug dealer was helping law enforcement agents, and that the agents planned to arrest them once the deal was in progress. In addition, the agents did not know that the men planned to rob the drug dealer. As the agents engaged in surveillance of the parking lot where the drug deal was supposed to occur, they witnessed the presumed deal transform into an attempted armed robbery of fictitious drugs; the agents intervened and arrested Mr. Beavers and the other defendants. (Tr. 7-8.)

### B. Questioning of Mr. Beavers

Law enforcement officers transported Mr. Beavers to a conference room in the Bartow County Sheriff's Office, where he was interviewed by Captain Mark Mayton and Agent Brian Bunce at approximately 3:22 p.m. (Tr. 8-9, 12.) Agent Bunce provided Mr. Beavers with the Miranda rights using a written form. (Id. at 9; see

2

also Gov't Ex. 1.) Agent Bunce read those rights to Mr. Beavers, made sure that he understood them by asking seven questions listed on the form,[2] and Captain Mayton and Agent Bunce witnessed him sign his name on the form, indicating that he was waiving his rights. (Tr. 9.) Agent Bunce then signed the form, followed by Captain Mayton, and they proceeded to question Mr. Beavers. (Id. at 9, 11; see also Def.'s Ex. 1 (transcript of Mr. Beavers's interview by law enforcement) pp. 2-3, 8.) During questioning, Mr. Beavers made incriminating statements. (Tr. 11.)

Captain Mayton testified that neither he nor Agent Bunce made any promises to Mr. Beavers or threatened him in any way to induce him to waive his rights. (Tr. 9.) According to Captain Mayton, Mr. Beavers appeared to understand his rights (id.), his responses to the agents' questions made sense (id. at 9-10), he seemed

---

[2] The following is a list of those seven questions. The answers that Mr. Beavers provided (which are circled on the form) are in bold and underlined below.

| | | | |
|---|---|---|---|
| What level of education have you completed? | Below 8 | 8-12 | **<u>12+</u>** |
| Do you understand the English language? | | **<u>Yes</u>** | No |
| Do you understand these rights? | | **<u>Yes</u>** | No |
| Having these rights in mind will you talk to me/us? | | **<u>Yes</u>** | No |
| Have you been threatened in any manner? | | Yes | **<u>No</u>** |
| Have you been promised anything? | | Yes | **<u>No</u>** |
| Have you been forced in any way to make statements? | | Yes | **<u>No</u>** |

(Gov't Ex. 1.)

AO 72A
(Rev.8/82)

oriented in time and space, he was in no pain, and he needed no medication (id. at 10).

Captain Mayton testified that, at the time of this custodial interrogation, the arrest warrant for Mr. Beavers had not yet been signed. (Tr. 13.) Moreover, during the interrogation, despite defendant's repeated requests, the agents were not able to tell him exactly what it was that they intended to charge him with. (Id. at 14-15; see also Def.'s Ex. 1, p. 1, lines 32-34; p. 45, lines 38-41; p. 46, lines 1-5; p. 48, lines 14-18.)

### C. The Indictment

The grand jury returned a six-count Indictment [1] against seven defendants on February 8, 2012. Count One charges defendants with conspiracy to commit armed robbery in violation of 18 U.S.C. § 1951(a) (the "Hobbs Act"). In Count Two, the Indictment charges defendants with aiding and abetting in brandishing a firearm during and in relation to the crime of violence charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. Count Three charges conspiracy to possess with intent to distribute at least 5 kilograms of cocaine and at least 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C). Count Four charges defendants with aiding and abetting in

4

brandishing a firearm in furtherance of the drug trafficking offense listed in Count Three, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.[3]

## II. **DISCUSSION**

Defense counsel writes, "In the case at bar, it is undisputed that Defendant was advised of his *Miranda* rights and that he waived those rights by signing the waiver form. However, despite his understanding of the rights, it is abundantly evident that Defendant was completely unaware of the nature of the offenses of which he was suspected at the time of making the confessions." (Def.'s Br. [134] 4-5.) Despite conceding that he waived his Miranda rights, Mr. Beavers argues that his statements should be suppressed under 18 U.S.C. § 3501(b)(2) because he was never made aware of the nature of the offenses for which he was suspected at the time he made the confession. (Def.'s Br. 1, 4-6.)

The statute on which defendant relies, 18 U.S.C. § 3501, provides in relevant part as follows:

> (a) In any criminal prosecution brought by the United States . . . , a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received

---

[3] Counts Five and Six charge defendants Jones and Finsley (respectively) with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Indictment also contains a forfeiture provision.

5

in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(a)-(b).

This case is controlled by Dickerson v. United States, 530 U.S. 428 (2000). As explained by the Supreme Court, in the wake of its ruling in Miranda, which held that certain warnings must be given before a suspect's statement made during a custodial interrogation could be admitted into evidence, Congress enacted § 3501,

6

AO 72A
(Rev.8/82)

"which in essence laid down a rule that the admissibility of such statements should turn only on whether or not they were voluntarily made." Id. at 431-32. "Given § 3501's express designation of voluntariness as the touchstone of admissibility, its omission of any warning requirement, and the instruction for trial courts to consider a nonexclusive list of factors relevant to the circumstances of a confession," the Court found that Congress intended by its enactment of § 3501 to overrule Miranda. Id. at 436. However, because Miranda announced a constitutional rule, Congress could not supersede it legislatively. Id. at 444. Thus, the Court found § 3501 unconstitutional. Id. at 442-43.[4] Instead, "*Miranda* and its progeny in this Court govern the admissibility of statements made during custodial interrogation in both state and federal courts," not § 3501. Id. at 432.

Accordingly, Mr. Beavers has no basis upon which to rely on § 3501. See United States v. Guanespen-Portillo, 514 F.3d 393, 398 (5th Cir. 2008) (Dickerson held that "§ 3501(a) is unconstitutional to the extent that it conflicts with the rule

---

[4] Although the opinion several times references § 3501, the Court quoted and addressed only sections (a), which made voluntariness the touchstone of admissibility, and (b), which instructed trial courts to consider a nonexclusive list of factors relevant to the circumstances of a confession. Dickerson, 530 U.S. at 436. The Court later addressed and upheld § 3501(c). See Corley v. United States, 556 U.S. 303 (2009).

7

announced in *Miranda*"); United States v. Joseph, 178 F. App'x 162, 169 (3d Cir. 2006) ("§ 3501 was held unconstitutional in *Dickerson*"); Guam v. Guerrero, 290 F.3d 1210, 1220 (9th Cir. 2002) (Court found § 3501 unconstitutional in Dickerson); United States v. Bustillos-Munoz, 235 F.3d 505, 516 (10th Cir. 2000) (§ 3501(b) ruled unconstitutional in Dickerson); United States v. Zhang, No. 99-4901, 2000 WL 951401, at *1 (4th Cir. July 11, 2000) ("[T]he Supreme Court ruled that Miranda, rather than § 3501, sets forth the proper standard for determining whether a confession by a person in custody is voluntary.") (citing Dickerson).[5]

The undersigned's conclusion is buttressed by another line of cases. In United States v. McCrary, 643 F.2d 323 (5th Cir. Unit B Apr. 1981),[6] a police officer never informed the defendant of the nature of the offense upon which the questioning that led to the incriminating statement was based. Id. at 328. The Fifth Circuit court

---

[5] Even if § 3501(b)(2) applied, it is but one factor a court should consider in determining the voluntariness of a confession. The record clearly shows that, even if Mr. Beavers was unaware of the charges he faced, other factors support admission of his confession. For example, defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, and defendant had been advised prior to questioning of his right to the assistance of counsel.

[6] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

8

noted that it was "difficult to discern how a waiver of [Miranda] rights could be knowing, intelligent and voluntary where the suspect is totally unaware of the offense upon which the questioning is based." Id. The court followed that statement with a footnote in which quoted 18 U.S.C. § 3501(b)(2). McCrary, 643 F.2d at 328 n.7. Although the court ruled that the defendant's confession should have been suppressed, it found the error harmless given the evidence against him. Id. at 329-30.

However, the Supreme Court subsequently rejected McCrary and cases like it in Colorado v. Spring, 479 U.S. 564 (1987). In Spring, ATF agents suspected the defendant of interstate transportation of stolen firearms and had learned from an informant that Spring had discussed his participation in a murder. Id. at 566. The agents arrested Spring during an undercover operation they had set up to buy firearms from him. Id. An ATF agent on the scene provided Spring with Miranda warnings, and he received them again and executed a waiver form when he arrived at the ATF office. Id. at 567. At his first interview on March 30, 1979, agents initially questioned the defendant about the firearms transaction that led to his arrest, but then asked Spring if he had ever shot anyone. Id. He admitted that he had, and when they asked if he had shot a man named Walker in Colorado and thrown his

9

body in a snowbank, he said no. Id. Agents questioned Spring again on May 26, 1979, and, following administration of Miranda warnings, told him that they wanted to question him about the Colorado murder. Id. This time, Spring confessed to the homicide. Id. at 567-68. A Colorado state court convicted Spring of murder. Id. at 568. However, the Colorado Supreme Court reversed the conviction, finding that his waiver of Miranda rights on March 30 was invalid because he had not been informed that he would be questioned about the Colorado murder, and he had no basis to conclude that, at the time he executed the waiver, the interrogation would extend to that subject. Id.[7]

The Supreme Court reversed the Colorado Supreme Court's decision, writing as follows:

> Once *Miranda* warnings are given, it is difficult to see how official silence could cause a suspect to misunderstand the nature of his constitutional right–"his right to refuse to answer any question which might incriminate him." "Indeed, it seems self-evident that one who is

---

[7] The Colorado Supreme Court followed the lead of several Federal Courts of Appeals–including McCrary–in holding that a suspect's awareness of the subject matter of the interrogation is one factor to be considered in determining whether a waiver of the Fifth Amendment privilege is valid. Spring, 479 U.S. at 571 n.3. As a ground for granting certiorari, the Supreme Court noted that other federal courts had held that a suspect's awareness of the subject matter of interrogation is not a relevant factor in determining the validity of a Miranda waiver. Id. Spring resolved that split of authority and rejected McCrary and similar cases.

10

told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled." We have held that a valid waiver does not require that an individual be informed of all information "useful" in making his decision or all information that "might . . . affec[t] his decision to confess." "[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Here, the additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature. Accordingly, the failure of the law enforcement officials to inform Spring of the subject matter of the interrogation could not affect Spring's decision to waive his Fifth Amendment privilege in a constitutionally significant manner.

Id. at 576-77 (citations and footnote omitted). Thus, the Court held that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." Id. at 577.[8]

---

[8] The Eleventh Circuit extended Spring in United States v. Farley, 607 F.3d 1294 (11th Cir. 2010). In that case, the defendant asserted that he was tricked by a federal agent who told him that the questioning would concern a terrorism investigation when the real purpose of the questioning concerned the defendant's attempted exploitation of a minor. Id. at 1325-26. The court noted that the advice of rights form signed by the defendant "conveyed in clear language each of the warnings required by Miranda." Id. at 1328. According to the Circuit, "Knowledge of what the agents really suspected him of doing would no doubt have been useful, possibly even decisive, to Farley in calculating the wisdom of answering their questions. But their deception on that point was not 'constitutionally significant,' because the lack of that information did not prevent Farley from understanding the nature of his rights and the legal consequences of waiving them." Id.

11

AO 72A

(Rev.8/82)

As this analysis makes clear, the only controlling Circuit decision supporting defendant's argument–<u>McCrary</u>–has been reversed. Moreover, the above cases make clear that agents do not have to tell a defendant the reason why they want to question him (<u>Spring</u>), and they may even mislead him about the reason for their questioning (<u>Farley</u>), as long as he understands the nature of his rights and the legal consequences of waiving them.

Given that § 3501(b)(2) has no application here, and defendant's concession that the requirements of <u>Miranda</u> were met and that he understood his rights (<u>see supra</u> page 5), there is no basis to exclude Mr. Beavers's statements. Therefore, the Motion to Suppress Statements should be denied.

### III. <u>CONCLUSION</u>

For the reasons explained above, the undersigned **RECOMMENDS** that the Motion to Suppress Statements filed by defendant Maurice Jammorow Beavers [113] be **DENIED**.

**SO RECOMMENDED**, this 8th day of August, 2012.

_/s/ Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)